AO 91 (Rev. 11/11)  Criminal Complaint

**FILED**
Sep 23, 2022
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT
### for the
Eastern District of California

| | |
|---|---|
| United States of America<br>v.<br>Javier Alonso LOPEZ<br><br><br><br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Case No.   1:22-mj-00145-BAM |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____June 2022_____ in the county of _____Fresno/Tulare_____ in the _____Eastern_____ District of _____California_____ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 USC § 843(b) | Use of a Communication facility to Facilitate Drug Felony<br><br>PENALTY: 4 years' imprisonment<br>$250,000 Fine<br>Not more than 1 yr. supervised release<br>$100 special assessment |

This criminal complaint is based on these facts:

Refer to Attached Affidavit of SA Shawn Riley attached hereto and incorporated herein

☑ Continued on the attached sheet.

_____
*Complainant's signature*

SA Shawn Riley
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by email and telephone.

Date:   09/23/2022

_____
*Judge's signature*

City and state:   Fresno, CA

Hon. Barbara A. McAuliffe, US Magistrate Judge
*Printed name and title*

PHILLIPA. TALBERT
United States Attorney
ANTONIO J. PATACA
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone:  (559) 497-4000
Facsimile:  (559) 497-4099
Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. |
|---|---|
| Plaintiff, | |
| v. | **AFFIDAVIT IN SUPPORT OF A** |
| Javier Alfonso LOPEZ | **CRIMINAL COMPLAINT** |
| Defendant | |

I, Shawn Riley, being first duly sworn under oath, depose and say:

### I.       INTRODUCTION AND AGENT BACKGROUND

#### A.       PURPOSE OF AFFIDAVIT

1.       I make this Affidavit to support a complaint charging Javier Alonso LOPEZ in violation of Title 21 USC § 843(b) - Use of a communication facility to facilitate a drug felony.

#### B.       TRAINING, EXPERIENCE, AND EXPERTISE OF SA SHAWN RILEY

2.       I am a Special Agent (SA) of the United States Department of Justice, Drug Enforcement Administration (DEA).  I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent

1

engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.  I have been employed as a Special Agent with the Drug Enforcement Administration (DEA) since January 2004 and am presently assigned to the Drug Enforcement Administration Resident Office in Fresno, California.  I have successfully completed a sixteen (16) week DEA Basic Agent Training Academy at the Drug Enforcement Administration Academy in Quantico, Virginia.  This training included instruction in the investigation of Federal drug violations, including, but not limited to Title 21, United States Code Sections 841 and 846.  I have discussed with numerous law enforcement officers, defendants, and informants, the methods and practices used by narcotics distributors.

3.    Based on this training and conversation with more senior law enforcement agents, I am familiar with narcotics traffickers' methods of operation including the distribution, storage, manufacturing, and transportation of narcotics and the collection of money proceeds of narcotics trafficking.

4.    I have participated in narcotics investigations either as a case agent or in a supporting role.  I have debriefed defendants, informants, and witnesses who had personal knowledge regarding narcotics trafficking organizations.  Additionally, I have participated in drug investigations including, but not limited to, undercover operations and conducting physical surveillance.  I have conducted and been involved in investigations regarding the unlawful manufacture, possession, distribution, and transportation of controlled substances, as well as conspiracies associated with criminal narcotics, in violation of Title 21, United States Code, §§ 841(a)(1), 841(c)(2), 843, and 846 and the State of California Health and Safety Code.

5.    The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## II.    FACTS ESTABLISHING PROBABLE CAUSE

6.      On June 16, 2022, the Honorable Jennifer L. Thurston, US District Court Judge for the Eastern District of California, signed Wire Intercept 1:22-sw-00286-JLT authorizing the interception of communications from phone number 661-731-5568 used by a an individual subsequently identified as Sostenes QUINTERO.  During this investigation, QUINTERO was commonly referred to by his alias, "CHAPARRO."  During the investigation preceding this wire intercept, QUINTERO was identified as a methamphetamine source of supply as well as being involved in the conversion of methamphetamine from a liquid to a crystalline form.

7.      On June 18, 2022, at approximately 8:08 PM, a phone call was intercepted from QUINTERO to an individual subsequently identified as Javier Alonso LOPEZ using phone number 661-668-7275.  During this phone call, QUINTERO asked if LOPEZ was able to get "LUIS'" phone number and LOPEZ stated that he (LOPEZ) did.  QUINTERO and LOPEZ agreed to talk to LUIS later.

8.      At approximately 8:39 PM, a phone call was intercepted from QUINTERO to LOPEZ using phone number 661-668-7275.  This was a lengthy phone call which occurred in Spanish and translated to English.  The following are portions of this phone call which initially occurred between QUINTERO and LOPEZ, then between QUINTERO and other third parties, and finally between QUINTERO, LOPEZ, and LUIS during a three-way phone call.  Initially during this phone call, QUINTERO asked LOPEZ the following regarding "LUIS"; "Do you know how to connect so the three (3) of us could talk?"  I concluded QUINTERO was asking LUIS to do a three-way phone call so both QUINTERO and LOPEZ could speak to LUIS.  In response, CDRs indicated LOPEZ used phone number 661-668-7275 to conduct a three-way phone call with a Mexico based phone number and QUINTERO, LOPEZ, and LUIS engaged in an intercepted conversation.  During a part of the conversation, the following exchange occurred.

| QUINTERO | Yeah. He's going to learn. The dude, is here. |
| LUIS | All good. Show him really well so he, he does it right. [Chuckles] |
| QUINTERO | Right, Javier? |

| LOPEZ | [U/I] |
|---|---|
| QUINTERO | He said that we are going to stir the pot. He's helping me stir the pot. |
| LOPEZ | We are here, learning how to make "chicharrones". |
| QUINTERO | Yeah. |

9. During this part of the conversation, QUINTERO informed LUIS that he (QUINTERO) was with a third party referred to as "Javier." I concluded that QUINTERO was referring to LOPEZ who's first name was subsequently identified as Javier. LUIS instructed QUINTERO to show "him really well." QUINTERO then referenced stirring a pot and LOPEZ stated, "we are here, learning how to make chicharrones." Based on this exchange, I concluded that QUINTERO was referring to LOPEZ as "Javier." Furthermore, the "stir the pot" statement became significant later in the conversation during which QUINTERO described converting methamphetamine from a liquid to a solid. I concluded that QUINTERO and LOPEZ were using cooking references to describe this process.

10. Later in the conversation, QUINTERO, LUIS, and LOPEZ had the following exchange.

| QUINTERO | No, you know. You know, if anything he's here man. I'm going to teach him how to, how to stir the "chicharrones" fucking good. |
|---|---|
| LUIS | Yeah. All right, that's good. That's good. No, no, no [U/I]. |
| | [Voices overlap] |
| QUINTERO | Remember, remember the ones you gave me? The little "windows"? Do you remember? |
| LUIS | Yes. Uh-huh. |
| QUINTERO | Oh, well, that's, that's the one we are stirring right now. But it comes in, in diesel, in diesel. |
| LUIS | Oh, yeah? |
| QUINTERO | Yeah, he [U/I] helps me stir it… |
| | [Voices overlap] |
| LUIS | All right. |
| QUINTERO | I know how to make it all, from the front to the back, the whole process. All of it. |
| LUIS | Yeah, well you were the one doing it all. You did the whole process. |
| QUINTERO | All of it, yeah. Now, now here again. We are here working hard. Ask Javier how, how… |
| LOPEZ | [Chuckles] |
| LUIS | Oh, no, no that's good, buddy. That's good, that, that you ran into that man over there as well. |

4

| LOPEZ | Yeah, he's here, he's here. Yeah. |
|-------|-----------------------------------|
| LUIS | He can help you, real good. Yeah. |

11.     Regarding LOPEZ and the conversion of methamphetamine, QUINTERO again used a cooking reference stating, "I'm going to teach him how to, how to stir the "chicharrones" fucking good."  QUINTERO clarified by asking if LUIS, "remember the ones you gave me? The little "windows"? Do you remember?"  LUIS agreed indicating he (LUIS) remembered supplying QUINTERO with the windows.  QUINTERO then stated that the windows came in "diesel."  Based on my training and experience, I know that the term "windows" is a common code word used for methamphetamine.  This is because methamphetamine can have the texture and consistency of glass shards, similar to a broken window.  I further know that methamphetamine is commonly smuggled across the US/Mexico border in a solvent solution.  I concluded that QUINTERO was using the term "diesel" to refer to this solution.  Upon being smuggled into the United States, the methamphetamine is then transformed from a liquid to a solid form through a conversion process during which the solution the methamphetamine is suspended in evaporates.  This conversion process occurs in clandestine laboratories more commonly known as methamphetamine conversion labs.  In a methamphetamine conversion lab, methamphetamine is not created but instead already exists and converted from a liquid form to a solid form for further distribution.  Regarding LOPEZ, QUINTERO stated, "he helps me stir it."  I concluded that QUINTERO was informing LUIS that LOPEZ was an active participant in the methamphetamine conversion process.  QUINTERO bragged to LUIS regarding his (QUINTERO's) proficiency in converting methamphetamine stating, "I know how to make it all, from the front to the back, the whole process. All of it."  LUIS agreed stating QUINTERO was the one, "doing it all."  Referring to LOPEZ and himself, QUINTERO stated that "we are here working hard" at the methamphetamine conversion process.  Addressing LOPEZ, LUIS replied that it was "good" LOPEZ "ran into that man over there", a reference to QUINTERO.  LOPEZ agreed.

12.     Towards the end of the conversation, the following exchange occurred between QUINTERO, LUIS, and LOPEZ.

| QUINTERO | And I want you know there's, there's, there's none of that right now. |
| LUIS | Really? |
| QUINTERO | There isn't any. They are looking but those people aren't giving me shit. |
| LUIS | Really? |
| QUINTERO | Not, to do that. Like how it comes from over there. Because it comes from a step before. |
| LUIS | Son of a bitch. |
| QUINTERO | Don't think it comes in liquid [PH] just like that, it's a step before. |
| LUIS | Oh son of a bitch. |
| QUINTERO | I have to add another, another… [U/I], another thing. |
| LUIS | Yes, yes. For sure. |
| QUINTERO | We do all that, ask Javier. |
| LOPEZ | He's going to poison himself. |

13. During this portion of the conversation, QUINTERO informed LUIS, "there's none right now." QUINTERO then stated, "Don't think it comes in liquid just like that, it's a step before." I concluded that QUINTERO was informing LUIS that there was no or limited methamphetamine in solution available. QUINTERO further complained that the methamphetamine in solution which was available was "a step before" and "I have to add another, another… [U/I], another thing." I concluded that QUINTERO was referring to an extra step in the conversion process to obtain finished methamphetamine. QUINTERO asked "Javier", a reference to LOPEZ to confirm and LOPEZ responded, "He's going to poison himself." Based on this statement, I concluded that QUINTERO was needing to add additional chemicals to the conversion process which were poisonous. Shortly after this portion of the conversation, the call unexpectedly disconnected.

14. On August 5, 2022, the following text messages were intercepted between QUINTERO and LOPEZ using phone number 661-668-7275.

- LOPEZ: Hey, my uncle is like a demon because of the pot. I did not see it last night...

6

- LOPEZ: ... I was looking. I thought (he) had told me outside.
- LOPEZ: I am with him, that is why I am not answering.
- LOPEZ: Just saw the pieces and some plastics pots. I thought those were...
- LOPEZ: the ones (you) told me.
- LOPEZ: Man, hey it smells and I... it continues... man. The tub, man....
- QUINTERO: No problem, just own up to it.
- LOPEZ: Do not even say you told me that because he is going to be even more mad.
- LOPEZ: Yes, I went out but did not see anything.
- LOPEZ: Just the ones that were outside. I did not think to go inside the stable.
- LOPEZ: He did not tell me what there is. And I only stored the ones that were plastic.
- QUINTERO: For sure. Hey, in the afternoon I will go to fix that.
- QUINTERO: The blue [U/I] can hold liquid.
- LOPEZ: No. I left it the same until my uncle told me he was that one that saw it. I...
- QUINTERO: Hey, do not throw away the broth dude.
- QUINTERO: Please.
- QUINTERO: Do me a favor, put it in a bucket and cover it.
- LOPEZ: When I go right now I will put it. I am here with him.

15.     During this text message exchange, LOPEZ referred to his uncle being upset after observing a "pot."  I subsequently learned that LOPEZ' uncle is the property owner of the location he (LOPEZ) lives at which was identified as a rural property off of Ave 50, Alpaugh, CA (Tulare County Assessor Parcel Number 311-100-022).  LOPEZ indicated that the pots "smell" and further mentions a "tub."  When QUINTERO directed LOPEZ to take responsibility or own up to it, LOPEZ indicated his uncle would be even more mad.  I concluded this was a direct reference to methamphetamine conversion occurring at LOPEZ' location which was emitting a bad odor which was being detected by LOPEZ' uncle, the

7

property owner.  QUINTERO informed LOPEZ that a "blue" one could hold liquid and further directed LOPEZ not to throw out the "broth."  I concluded that QUINTERO was referencing a blue container used in the methamphetamine conversion process and was asking LOPEZ not to throw out the methamphetamine solution, referred to as "broth", even if it smelled bad.  To hide the smell, QUINTERO directed LOPEZ to place the methamphetamine in solution in a bucket and cover it.

16.    On September 14, 20222, the Honorable Barbara A. McAuliffe, US Magistrate Judge for the Eastern District of California, signed Search Warrant 1:22-sw-0400-BAM authorizing the search of multiple properties to include this rural property in Alpaugh, CA. On the morning of September 22, 2022, this search warrant was executed.  During the execution of the search warrant, LOPEZ was contacted on the property as he was exiting a trailer.  LOPEZ was detained without incident and, in his possession was a black iPhone.  I confirmed the phone located in LOPEZ possession was 661-668-7275 by calling that phone number, observing LOPEZ' phone to ring, and observing my phone number displayed as the calling phone number.  It should be noted that, while detained, LOPEZ waived his Miranda rights and provided a post arrest statement.  During this interview, LOPEZ was shown a photograph of QUINTERO who he denied knowing and also denied knowing the alias "CHAPARRO" which QUINTERO is commonly known as.

17.    During the search of this property, investigators located a suspected methamphetamine conversion lab in a trailer which was separated by approximately 200 yards from the trailer LOPEZ was encountered departing.  The suspected methamphetamine conversion lab was not active and consisted of multiple empty acetone and muriatic acid containers.  Both chemicals are commonly used to convert methamphetamine from a liquid form to a crystal form.  The suspected methamphetamine conversion lab also consisted of five gallon buckets, a large metal stirring spoon, and various containers including three large tubs and a large plastic blue container which I believe were specifically referenced in the above text message exchange between QUINTERO and LOPEZ.  All of the containers contained suspected methamphetamine residue indicating they were used during the methamphetamine

conversion process.  I conducted preemptive tests on the residue on multiple containers which consistently returned presumptive positive for methamphetamine.  I believe that the location of this suspected methamphetamine conversion lab corroborated the conclusion that the communications intercepted between QUINTERO and LOPEZ were drug related.

### III.    CONCLUSION

4.    Based on the foregoing, there is probable cause to believe that LOPEZ did knowingly and intentionally use a communications device in furtherance of a drug felony in violation of Title 21 U.S.C. Section 843(b).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____
Shawn Riley, Special Agent
United States Drug Enforcement Administration

Attested to by the applicant in accordance with the requirements of Fed.R.Crim.P. 41.1, by internet/telephone on this **23** day of September, 2022.

_____
The Honorable Barbara A. McAuliffe
United States Magistrate Judge

Approved as to form and substance:

/s/  *Antonio J. Pataca*
Antonio Pataca
Assistant United States Attorney

9